| | |
|---|---|
| **DISTRICT COURT,**<br>**BOULDER COUNTY, COLORADO**<br>**1777 6ᵗʰ Street**<br>**Boulder, CO 80302** | DATE FILED: February 26, 2020 3:46 PM<br>FILING ID: 4450BD53C4FB1<br>CASE NUMBER: 2020CV30196 |
| **Plaintiff:**     **HETTICK CONTRACTORS, LLC,**<br><br>v.<br><br>**Defendant:**   **THE HANOVER INSURANCE**<br>                            **COMPANY.** | ▲COURT USE ONLY▲ |
| **Attorneys for Plaintiff**<br>**Jonathan S. Sar, No. 44355**<br>jsar@dalyblack.com<br>**Sean B. Leventhal, No. 42371**<br>sleventhal@dalyblack.com<br>**Richard Daly, No. 51941**<br>rdaly@dalyblack.com<br>**John Scott Black, No. 50440**<br>jblack@dalyblack.com<br>ecfs@dalyblack.com<br>**Daly & Black, P.C.**<br>**2211 Norfolk Street, Suite 800**<br>**Houston, TX 77098**<br>**Phone Number:**     (713) 655-1405<br>**Fax Number:**        (713) 655-1587 | **Case Number:**<br><br>**Division:**<br><br>**Courtroom:** |
| **ORIGINAL COMPLAINT AND JURY DEMAND** | |

COMES NOW, Plaintiff Hettick Contractors, LLC, ("Hettick Contractors"), by and through its attorneys, Daly & Black, P.C., and for its original complaint against The Hanover Insurance Company ("Hanover"), alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Lightning Eliminators and Consultants Inc. ("Lightning Eliminators") was insured by Hanover at all times described in this Complaint.

2. Lighting Eliminators is the owner of the subject property, located at 6687 Arapahoe Rd, Boulder, CO 80303 (the "Property").

1

Exhibit A

2

3. At all relevant times, Lightning Eliminators is and was the beneficiary of a property insurance policy covering the Property issued by Hanover (the "Policy").

4. Hettick Contractors performed work on the Property and also received an assignment of benefits from Lighting Eliminators of the proceeds due under the Hanover policy, plus any associated causes of action.

5. Venue is proper in this district pursuant to C.R.C.P. 98 because Lightning Eliminators is and was located in Boulder County at all times relevant to this case and all activities alleged herein occurred in Boulder County.

6. All of the acts described in this Complaint occurred in the State of Colorado under Colorado law, and involve an insurance policy governed by Colorado law.

7. This Court has personal and subject matter jurisdiction over this case pursuant to Colo. Rev. Stat. §§ 13-1-124 1(a), (b), and (c).

**GENERAL ALLEGATIONS**

8. On or about May 18, 2018, a hail and wind storm struck the Boulder, Colorado, area. During the course of the storm, the Property was severely damaged. Specifically, the roof and interior to the building was damaged.

9. Lightning Eliminators' building is a commercial building with a 125 square, multi-layered roofing system, gravel roof sections of 12 and 2 squares, and a 14 square metal roof section. The Property was severely damaged, and the damage included without limitation, all roof surfaces, soft metals, siding and exterior components, HVAC units. Further, the interior of the Property was severely damage as a result of water intrusion through the roof system of the Property.

10. Lighting Eliminators filed a claim with its insurance company. Hanover assigned the claim to an adjuster at Lighthouse Claims Services.

11. On or about June 28, 2018, Hanover's adjuster sent Lightning Eliminators a line-item estimate for the building containing a scope of work to be performed due to hail damage to the Property. Despite the interior water damage and the fact that the integrity of the underlayment and decking to the roof systems had been compromised due to having been saturated with moisture from the storm damage, Hanover's estimate proposed to merely reapply a liquid roof coating. The proposed reapplication of a liquid coating to roof covering of the Property would have resulted in the growth of mold, further deterioration of the roof materials and compromise the structural integrity of the Property. The total replacement cost value estimated by Hanover for the Property was $42,626.98. This estimate included, approximately $38,088.04 to reapply a liquid coating over top of the compromised roof systems and approximately $942.35 to repair interior damage to only one individual office of the Property.

12. Lighting Eliminators retained Hettick Contractors to perform the work. As such, Hettick Contractors asserted an entitlement to benefits owed directly to, and on behalf of, Lighting Eliminators on its insurance policy. Hettick Contractors assessed the scope of work required to repair the damage and provide a reasonable valuation of the cost to perform said work.

13. On August 27, 2018, Hettick Contractors produced a 355-page estimate and photo report approximating $578,132.53 to properly repair the Property to pre-loss condition. Hettick Contractors' estimate included but was not limited to, approximately $365,589.24 for replacement of the compromised roof systems and approximately $94,982.61 to repair interior damage to the Property; including the main area, kitchen, shop, foyer, conference room, break room, and five (5) separate individual offices of the Property. Further, Hettick Contractors' estimate and photo report provided Hanover the proper city building code requirements to determine why and how the roof systems needed to be replaced.

14.     On or about October 04, 2018, Hanover acknowledged receipt of Hettick Contractors' assignment of the claim and benefits executed between Hettick Contractors and Lighting Eliminators.

15.     The city building department refuted the liquid coating cover job proposed by Hanover and required that the roofs of the Property be replaced due to water intrusion under the substrate of the roof systems to the Property.

16.     On January 15, 2019, the professional engineer retained to assess the feasibility of re-applying a liquid coating to the roof systems made the following written findings:

> We have been asked to give our opinion on whether the reapplication is possible given the state of the underlayment and decking. Upon visual inspection, we have found that the integrity of the underlayment and decking has been compromised due to having been saturated with moisture. A reapplication at this point would result in the growth of mold and further deterioration of the roof materials. It is our recommendation that the underlayment and decking be replaced entirely before any coating to the roof is applied. This will ensure that no structural deterioration or mold growth will take place. We have included photos of the roof in question as well as of the interior water damage to the building's ceiling following this report for your reference.

17.     On March 15, 2019, Hanover hired PIE Consulting and provided it's second estimate on the claim for approximately $240,364.72, including $212,072.83 for replacement of the compromised roof systems. In contrast to Hanover's June 28, 2018 estimate which provided for a mere coating of the roof and some payment for interior damage, the March 15, 2019 estimate from Hanover's adjuster provided for a full roof replacement but denied any payment to repair the extensive interior damage caused by water damage from the hail-damaged roof systems.

18.     Hettick Contractors performed work to put the Property back in pre-loss condition.

19.     On September 20, 2019, after denying payment for interior water damage caused by the compromised roof Hanover refused to pay to replace for nearly nine (9) months, Hanover's adjuster provided a third estimate on the claim, reducing the previous $212,072.83 for replacement of the roof systems to $179,065.50 while expanding the scope of work to be performed to the roof.

Exhibit A

20. It is common knowledge in the roofing industry that TPO or EPDM roofs, like those denied in the subject claim, may not show any visible damage, but large hail could break the fiberglass mesh underneath the shell, which will compromise the roof and cause it to absorb water.

21. Often times, as well as in the instant case, the underlayment and decking can become compromised, negatively impacting the fire rating of the substrate, water-shedding ability and causing interior water leakage throughout the entire building.

22. The second and third estimates demonstrate Hanover continuously and unreasonably refused to perform industry standard testing to the roofs of the Property, stating:

> No roof sample taken. Entire make-up of the roof assembly is unknown. Quantities taken from estimate prepared for Hanover Insurance by Lighthouse Claims Services.

23. In over nine (9) months since Lightning Eliminators filed the claim, Hanover unreasonably denied coverage for said damage and refused to perform any testing to determine whether the water-soaked decking and underlayment had compromised the integrity of the roofing system.

24. Hanover failed to perform said testing and deliberately ignored city building department and code information demonstrating that a roof replacement was required.

25. For over nine (9) months, Hanover continuously and unreasonably refused to provide payment of benefits necessary to cover the total cost of repair to the roofing system, siding and other significant damage to the Property. Specifically, Hanover persisted without a reasonable basis in unreasonably refusing to pay benefits for a full roof replacement before it realized the city code and building department would not allow its proposed re-coating of the roof covering.

26. Over (6) months after Hanover decided it was required to pay for a roof replacement and fifteen (15) months after denying same on the Property, Hanover unreasonably reduced its previously estimated price for the roof replacement of the Property by approximately $33,000 without a reasonable basis while simultaneously increasing the scope of work to be performed.

27. The claim was unreasonably delayed, denied, and/or underpaid because Hanover accepted Lightning Eliminators' claim for hail damage, refused to perform industry-accepted testing to determine the extent to which the roofs were damaged and causing leaks to the interior of the building, continuously insisted on a repair that was not in accordance with code and city building requirements and would result in the growth of mold and further deterioration of the roof materials. Hanover unreasonably refused to provide payment for the full scope of work to repair the property to code, manufacturer specifications and industry standards.

28. Hanover failed to perform its due diligence to acknowledge the entire scope of damage and unreasonably denied and delayed coverage without providing a reasonable basis.

29. To date, Hettick Contractors has not been able to complete the work required because Hanover wrongfully refused to issue payment to repair the damage the storm caused to the Property, failed to address significant areas of damage to the Property, and failed to provide any payment for all coverage implicated in the Lightning Eliminators' loss. Furthermore, the policy benefits that should have been provided were unreasonably delayed because Hanover continuously refused to render a coverage decision or tender payment to perform the replacement and repairs in accordance with the industry standard and put Lightning Eliminators' property back in its pre-loss condition.

30. Hanover wrongfully and unreasonably failed to pay the entire claim for repairs to the Property even though the Policy provided coverage for losses such as those suffered to the Property. Furthermore, despite repeated requests to perform testing and provide support for cited exclusions, Hanover refused to perform its due diligence to adequately investigate the claim for damages, resulting in significant and unreasonable denial and delay.

31. Hanover failed to perform its contractual duties to adequately compensate the claimant under the terms of the Policy for the damages sustained to the Property. Specifically, Hanover refused to pay the full proceeds of the Policy, although due demand was made to properly adjust the claim

for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished..

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

32. Hettick Contractors realleges and incorporates the previous allegations as if fully set forth herein.

33. A contract of insurance existed between Hanover and Lighting Eliminators; namely, the Policy.

34. The Policy provides replacement cost coverage, which, according to Hanover, pays the cost to repair or replace the damaged property, subject to the Policy's limit of liability.

35. The Policy requires Hanover to pay replacement cost benefits for covered losses.

36. The Policy requires Lighting Eliminators to pay insurance premiums in exchange for replacement cost coverage, which Lighting Eliminators did.

37. Hail and wind damage are covered losses under the Policy.

38. The weather event and the damage caused by such weather event, both of which are described above, constitute a covered loss under the Policy.

39. Hanover's estimate, which indicated the amount it was willing to pay in replacement cost benefits, did not reflect the actual, necessary, and reasonable cost of repair or replacement to the Property for covered losses. Hanover's estimate was unreasonable.

40. Without limitation, Hanover failed to provide policy benefits reasonably necessary to pay for repair and/or replacement of Lighting Eliminators' hail-damaged property.

41. Hanover breached its contract by, among other things, failing to pay Lightning Eliminators or Hettick Contractors for its losses and by compelling Hettick Contractors to institute litigation to recover amounts due under the agreement of insurance with Hanover.

42. As a result of Hanover's actions and/or inactions, Hettick Contractors has sustained damages and losses in amounts to be proved at trial and for which Hanover is liable.

## SECOND CLAIM FOR RELIEF
### (VIOLATION OF C.R.S. 10-3-1115 AND 1116)

43. Hettick Contractors realleges and incorporates the previous allegations as if fully set forth herein.

44. At all times pertinent hereto, the following Colorado statute was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

45. The phrase, "on behalf of any first-party claimant" includes contractors under Colorado law, and C.R.S. §10-3-1116 provides a remedy for such denial or delay of payments in the form of the amount owed, plus "reasonable attorney fees, court costs, and two times the covered benefit." Regardless, all of Lighting Eliminators' rights concerning the claim were assigned to Hettick Contractors.

46. The claim presented to Hanover was so open and obvious that any reasonable insurer would have paid the benefits necessary to perform the replacement and repairs in accordance with the industry standard and put the Property back in pre-loss condition.

47. By refusing to provide a reasonable basis for withholding payment of benefits necessary to repair the total damage done to the Property, Hanover has unreasonably denied and delayed payment to Hettick Contractors in violation of C.R.S. §10-3-1115.

48. Hanover is subject to the provisions of C.R.S. §10-3-1116 for double damages, court costs, and attorney fees in addition to those claimed elsewhere in this Complaint.

**PRAYERS FOR RELIEF**

WHEREFORE, Hettick Contractors prays for damages against Hanover as follows:

a. Damages for breach of contract, including the value of benefits Hettick Contractors was entitled to receive under the Policy that were not provided; damages for delayed payment; consequential damages; and reasonable interest on delayed payment;

b. Compensatory damages against Hanover including economic and noneconomic damages;

c. Double damages, court costs, and reasonable attorneys' fees incurred in prosecuting this action pursuant to C.R.S. §10-3-1116;

d. An award of pre-judgment interest, and costs; and

e. Such other and further relief as this Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted February 26, 2020.

*/s/ Jonathan S. Sar*
Jonathan S. Sar, No. 44355
Sean B. Leventhal, No. 42371
Richard Daly, No 51941
John Scott Black, No. 50440
Daly & Black, P.C.
2211 Norfolk Street, Suite 800
Houston TX 77098
Phone Number: 713-655-1405
Fax Number: 713-655-1587
Email: sleventhal@dalyblack.com
 jsar@dalyblack.com
 rdaly@dalyblack.com
 jblack@dalyblack.com
 ecfs@dalyblack.com
*Attorneys for Plaintiff*

Address of Plaintiff:
6105 S Main Street, Suite 200
Aurora, CO 80016